# IN THE SUPREME COURT OF IOWA

No. 11–0469

Filed October 26, 2012

**STATE OF IOWA,**

Appellee,

vs.

**LORRAINE ANN MESSER,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Mahaska County, Randy S. DeGeest, Judge.

Defendant appeals her conviction and sentence for third-degree fraudulent practice. **DECISION OF COURT OF APPEALS AND JUDGMENT AND SENTENCE OF DISTRICT COURT AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Dennis D. Hendrickson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Martha E. Trout, Assistant Attorney General, Rose Anne Mefford, County Attorney, and Misty D. White-Reinier, Assistant County Attorney, for appellee.

**WATERMAN, Justice.**

The district court found Lorraine Messer guilty of fraudulent practice in the third degree for possessing 218 packs of cigarettes lacking tax stamps. The fighting issue on appeal is a question of first impression: whether "the amount of money or value of property or service involved" in this crime is the amount of the unpaid tax or, rather, the value of the cigarettes. *See* Iowa Code §§ 453A.36, .37 (2009) (prohibiting possession of packs of cigarettes without tax stamps and defining crime as a fraudulent practice); *id.* §§ 714.9–.14 (setting forth five degrees of fraudulent practice divided according to "the amount of money or value of property or service[s] involved" and defining value). Messer contends the degree of the crime should be based on the unpaid cigarette tax, which is enough to convict her of fourth-degree fraudulent practice, but insufficient to convict her in the third-degree, a more serious offense with double the potential fine and sentence of incarceration. The State contends the value of the property involved is the sale price of the unstamped cigarettes Messer possessed, an amount sufficient to affirm her conviction.

The district court concluded "[t]he crime is possession of the cigarettes" without tax stamps and determined the degree of fraudulent practice is based on the value of the cigarettes, not the amount of the unpaid tax. The court of appeals affirmed. We agree, based on the plain meaning of the operative statutory language as explained below. We therefore affirm Messer's conviction.

## I. Background Facts and Proceedings.

In early 2010, the Oskaloosa police received a tip from the department of revenue that Messer was selling untaxed cigarettes from her home. The police arranged a controlled buy where an undercover

officer purchased two packs of cigarettes from Messer at $3 each. Neither pack bore an Iowa tax stamp. The police then executed a search warrant and discovered 218 packs of cigarettes in Messer's home. None of the packs contained the Iowa tax stamp.

Messer told police she purchased the cigarettes at Indian reservations without paying state taxes. She would buy cartons of cigarettes at $27 apiece and then sell them from her home for $30. Messer used the proceeds from selling the cigarettes to her family and friends to cover the cost of gas in acquiring the cigarettes and to pay for her own cigarettes.

The State charged Messer with third-degree fraudulent practice, an aggravated misdemeanor, in violation of Iowa Code sections 453A.36, 453A.37, 714.8(10), and 714.11(1). Messer pled guilty to fraudulent practice, but she contended at trial that she was only guilty of fraudulent practice in the fourth degree, a serious misdemeanor. *See id.* § 714.12.

The court conducted a bench trial to determine the appropriate degree. Trial included testimony from the arresting officer, three exhibits, and oral argument from counsel. The district court entered judgment against Messer for third-degree fraudulent practice. It reasoned:

> It is clear to the court by any of the three stated methods of valuation, market value within the community, actual value or replacement value, that the State is correct. The fraudulent practices is possession of the untaxed cigarettes. Iowa Code section 453A.36(1) provides: ". . . it is unlawful for any person to have in the person's possession for sale, distribution or use, or for any other purpose in excess of forty cigarettes . . . ." The crime is possession of the cigarettes.

The court of appeals affirmed, concluding:

> In this case, the legislature chose to draft section 453A.36 to make possession of untaxed cigarettes the crime, not the failure to pay the tax. Because the prohibited act is the possession of the untaxed cigarettes, we find it is the untaxed cigarette's value, not the amount of the unpaid tax, that is the property "involved" under the fraudulent practice code sections.

We granted Messer's petition for further review.

## II. Standard of Review.

We review questions of statutory interpretation for corrections of errors at law. *State v. Overbay*, 810 N.W.2d 871, 875 (Iowa 2012).

## III. Analysis.

Several statutes must be read together to resolve this case. Iowa Code section 453A.36(1) states

> it is *unlawful* for any person to have in the person's *possession* for sale, distribution, or use . . . *in excess of forty cigarettes* . . . upon which a tax is required to be paid by this division, *without having affixed to each individual package of cigarettes, the proper stamp evidencing the payment of the tax* and the absence of the stamp on the individual package of cigarettes is notice to all persons that the tax has not been paid and is prima facie evidence of the nonpayment of the tax.

(Emphasis added.) This provision makes it a crime to possess packs of cigarettes lacking tax stamps. The presence of the tax stamp on the pack signals to enforcement officials that the requisite tax has been paid to the State. *See id.* ("[T]he absence of the stamp on the individual package of cigarettes is notice to all persons that the tax has not been paid and is prima facie evidence of the nonpayment of the tax.").

Sections 453A.37 and 714.8(10) define violations of section 453A.36(1) as fraudulent practices.[1] Section 453A.37 states "[a] person who violates a provision of this division is guilty of a fraudulent practice," and section 714.8(10) states a person may be convicted for "any act expressly declared to be a fraudulent practice by any other section of the Code." Messer pleaded guilty to violating these sections and received a suspended sentence. On appeal, she concedes she engaged in a fraudulent practice, but challenges the degree of fraud she committed.

Sections 714.9 through 714.13 define five degrees of fraudulent practice. Third-degree fraudulent practice is defined, in part, as "[a] fraudulent practice where the amount of money or value of property or service involved exceeds five hundred dollars but does not exceed one thousand dollars." Iowa Code § 714.11(1).[2] A person convicted of third-degree fraudulent practice, an aggravated misdemeanor, may receive a sentence of imprisonment of up to two years and a fine of no less than $625 and no greater than $6250. *Id.* § 903.1(2). Fourth-degree fraudulent practice contains identical language, except the amount of money or value of the property or service must exceed $200, but not exceed $500. *Id.* § 714.12. The maximum term of imprisonment for fourth-degree fraudulent practice, a serious misdemeanor, is one year

---

[1]Although the Iowa Code contains similar provisions that tax controlled substances, the statutory scheme does not define as a fraudulent practice the possession of such controlled substances without a tax stamp. *See* Iowa Code ch. 453B, entitled "Excise Tax on Unlawful Dealing in Certain Substances."

[2]Iowa Code section 714.11(3) also states that it is a third-degree fraudulent practice if "it is not possible to determine an amount of money or value of property and service involved." In *State v. McSorley*, we determined that this subsection was applicable in cases when "a qualitative misrepresentation is established that is incapable of being quantified as to value or amount." 549 N.W.2d 807, 810 (Iowa 1996).

and the fine must be no less than $315 and no greater than $1875. *Id.* § 903.1(1)(*b*).

For the purposes of these sections, the value of the property "is its highest value by any reasonable standard at the time the fraudulent practice is committed," including the "market value within the community, actual value, or replacement value." *Id.* § 714.14. The parties do not dispute the amount of the unpaid tax or the value of the cigarettes, but disagree over which amount determines the degree of the fraudulent practice. The State contends the fraudulent practice is the possession of unstamped cigarettes and thus that the property involved is the cigarettes Messer possessed. At a $3 per pack purchase price, the value of the 218 packs of unstamped cigarettes Messer possessed is $654, a third-degree fraudulent practice. *See id.* § 714.11(1). Messer contends the property involved is the unpaid tax. Under her theory, the value of the property involved is $296.48 (218 cigarette packs contain 4360 individual cigarettes, multiplied by a tax of 6.8¢ per cigarette), a fourth-degree fraudulent practice. *See id.* § 714.12.

We give the words of statutes their ordinary meaning. *State v. Kidd,* 562 N.W.2d 764, 765 (Iowa 1997). "When a statute is plain and its meaning clear, courts are not permitted to search for meaning beyond its express terms." *State v. Chang,* 587 N.W.2d 459, 461 (Iowa 1998). Canons of construction such as the rule of lenity are inapplicable when the operative statutory language is unambiguous. *See, e.g., Kidd*, 562 N.W.2d at 766 ("Because the meaning of the statute is clear from the words used, the statute is not ambiguous and we have no occasion to consider the rule of lenity.").

Messer argues the provisions conditioning the applicable fraud degree on the "value of property . . . involved" must be interpreted in light

of the economic loss caused by her fraud (the unpaid tax amount). She articulates a three-prong argument to advance this position. First, she observes the cigarettes were not stolen property, but a legal product taxed by the state. She invites us to infer that mere possession of legally acquired goods cannot be a fraudulent practice. Next, she argues "the thrust" of chapter 453A, which governs cigarette and tobacco tax, is payment of the tax as documented by the tax stamp. In other words, she claims "the purpose of the chapter is to secure tax revenue," and therefore, "the criminal law loss is the [unpaid] tax on an otherwise legal product." Finally, she seizes upon precedent stating the word "involved" in sections 714.9 through 714.13 should be construed in light of the prohibited fraudulent practice. *See State v. McSorley*, 549 N.W.2d 807, 809 (Iowa 1996). In her view, the prohibited fraudulent act is tax evasion and the words "property" and "involved" must be construed accordingly.[3]

Although Messer's argument has logical appeal, it is inconsistent with the wording of the statutes as enacted by the legislature. Under the plain and unambiguous language of section 453A.36, the crime is defined as the "possession for sale . . . in excess of forty cigarettes . . . without having affixed . . . the proper stamp." Iowa Code § 453A.36(1); *see also id.* § 453.37 (providing such a violation is a "fraudulent practice"). Accordingly, Messer's "possession" of the unstamped cigarettes is the fraudulent practice, rather than her failure to pay the tax.

---

[3]Messer also relies on *United States v. Morrison*, 685 F. Supp. 2d 339 (E.D.N.Y. 2010), which we find to be inapposite. *Morrison* adjudicated whether a *city* was directly and proximately harmed by the sale of cigarettes without a *state* tax stamp under the Federal Racketeer Influenced and Corrupt Organizations Act. *Id.* at 345. The court's analysis does not assist our interpretation of the Iowa Code provisions applicable here.

Similar enforcement schemes exist elsewhere in the Iowa Code, including the familiar provisions that require drivers of automobiles to present evidence of vehicle registration and proof of insurance upon demand. *See id.* § 321.32 (requiring a vehicle registration card to "be shown to any peace officer upon the officer's request"); *id.* § 321.20B (requiring drivers of motor vehicles to have and carry proof of financial liability coverage in the motor vehicle). Using section 321.32 as an example, persons who fail to show proof of vehicle registration when requested violate this section whether or not the car has in fact been registered. The penalty for driving an unregistered vehicle is set forth in another Code section. *See id.* § 321.17.

The same is true here. A person violates Iowa Code section 453A.36(1) by possessing unstamped cigarettes. The operative statutory language does not define the fraudulent practice as the failure to pay the tax. As with the vehicle registration statutes previously discussed, chapter 453A sets forth the penalties for failing to pay the required taxes in a separate provision. *See id.* § 453A.28 (specifying the civil penalties for failing to pay the required tax). Further, while the "thrust" of chapter 453A may be to enforce payment of cigarette taxes, that rationale does not alter the analysis. The unambiguous statutory language defines the possession of unstamped cigarettes to be the fraudulent practice. The property "involved" in that fraudulent practice is the cigarettes possessed by the defendant, not the unpaid tax.

Our conclusion is supported by our precedent. In *McSorley*, the defendant, a manager at Coastal Mart, altered store records to conceal a $4559 accounting deficiency. 549 N.W.2d at 808. He did not, however, obtain any money from the alterations, and no party suffered any economic loss. *Id.* He was convicted of violating section 714.8(4), which

defines as a fraudulent practice the act of making "any entry in or alteration of any . . . records of any corporation . . . , knowing the same to be false." *Id.* McSorley argued that the legislative history of chapter 714 supported his assertion that "involved" meant "obtained," and he thus could only be convicted of the lowest degree of fraudulent practice because he obtained nothing. *Id.* at 809–10. The explanation accompanying the House File version of the fraudulent practices bill states, "[t]he degree of crime and severity of penalty are *primarily* determined by the amount of money or value of property or service obtained by committing a fraudulent practice." *Id.* at 809 (emphasis added) (quoting H.F. 237, 67th G.A., 1st Sess. (Iowa 1977)).

We rejected McSorley's argument that the degree of fraudulent practice must be determined by the amount obtained by the defendant. We recognized "[o]ne of the purposes behind the Code revision was to consolidate repetitive and overlapping provisions and eliminate redundancies in the old Code that had arisen from a process of ad hoc, piecemeal amendments." *Id.* Consequently, we concluded that, "[i]f the word 'involved' is interpreted to mean 'obtained,' there would be considerable duplication between the fraudulent practice provisions and the theft provisions, rendering the former redundant or meaningless." *Id.* at 810. Instead, we emphasized, "[t]he language of the fraudulent practice statute should be construed in light of the acts that are prohibited." *Id.* at 809. Because McSorley was charged with violating section 714.8(4), which prohibits false accounting entries, we concluded "the amount of money or value of property . . . 'involved' " to determine the degree of the fraudulent practice was the amount by which he "misrepresented the financial condition of his employer," that is, the $4559 alteration to the records. *Id.* at 809–10.

Applying *McSorley* here, Messer's prohibited act was the possession of unstamped cigarettes in violation of section 453A.36(1). Accordingly, it is the value of the property involved in that prohibited act—the unstamped cigarettes—that determines the degree of her fraudulent practice.

At trial, the district court found the value of 218 packs of untaxed cigarettes is $654. That finding is supported by substantial evidence. Third-degree fraudulent practice is established when the value of the property involved exceeds $500, but is less than $1000. Iowa Code § 714.11(1). Accordingly, the district court correctly entered judgment against Messer for third-degree fraudulent practice.

**IV. Conclusion.**

For these reasons, we affirm the decision of the court of appeals and the judgment, conviction, and sentence of the district court.

**DECISION OF COURT OF APPEALS AND JUDGMENT AND SENTENCE OF DISTRICT COURT AFFIRMED.**