# IN THE COURT OF APPEALS OF IOWA

No. 16-0308
Filed June 7, 2017

**JOHN ARNZEN,**
      Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
      Respondent-Appellee.

_____

Appeal from the Iowa District Court for Dubuque County, Monica L. Ackley, Judge.

Applicant appeals from an order granting his application for postconviction relief. **REVERSED AND REMANDED.**

Alexander D. Smith of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Benjamin M. Parrott, Assistant Attorney General, for appellee.

Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

This is the fourth time John Arnzen has filed an appeal arising out of or related to his convictions for indecent contact with a child. In the first appeal, we reversed the dismissal of Arnzen's application for postconviction relief, concluding he had been denied the opportunity to be heard and had received ineffective assistance of postconviction counsel. *State v. Arnzen* (*Arnzen I*), No. 10-1150, 2011 WL 3480977, at *5 (Iowa Ct. App. Aug. 10, 2011). In the second appeal, Arnzen unsuccessfully challenged his civil commitment as a sexually violent predator pursuant to Iowa Code chapter 229A (2001). *In re Det. of Arnzen* (*Arnzen II*), No. 10-1340, 2012 WL 163239, at *6 (Iowa Ct. App. Jan. 19, 2012). In the third appeal, Arnzen challenged the district court's procedure in reviewing his status as a sexually violent predator. *See In re Det. of Arnzen* (*Arnzen III*), No. 15-1490, 2016 WL 7403713, at *2 (Iowa Ct. App. Dec. 21, 2016). This appeal arises out of Arnzen's application for postconviction relief, which was tried on the merits following remand in *Arnzen I*. In this case, Arnzen appeals from the district court's order *granting* his application for postconviction relief.

To understand the somewhat odd posture of this appeal, it is necessary to understand the context in which it arises. The relevant procedural posture was set forth in the second appeal:

> In 2002, Arnzen pled guilty to three counts of indecent contact with a child in violation of Iowa Code sections 709.12(1) and 709.12(4) (2001). Arnzen was sentenced to a term of imprisonment not to exceed two years on each count, with two counts to run concurrently and one count to run consecutively to the other counts, for a total effective term of four years. Because Arnzen had previously been convicted of indecent contact with a

child in 1986, his four-year sentence was doubled to eight years and he was required to serve eighty-five percent of his sentence before becoming eligible for parole or work release. *See* Iowa Code § 901A.2(1). January 28, 2009, was the date that Arnzen was expected to be released from incarceration for that sentence. Arnzen was also sentenced to serve an additional two years of parole or work release for each of the three counts. *Id.* § 901A.2(7).[1]

Prior to Arnzen's release, the department of corrections notified the Attorney General and the multidisciplinary team. *Id.* § 229A.3(1)(a) (2007). On July 12, 2007, the multidisciplinary team convened and notified the Attorney General of its assessment that Arnzen met the criteria for definition as an SVP. *Id.* § 229A.3(4).

On December 9, 2008, Arnzen met with the Iowa Board of Parole. The next day, the prosecutor's review committee convened and determined that Arnzen met the definition of an SVP. *Id.* § 229A.3(5). The Attorney General filed a petition alleging Arnzen to be an SVP on December 17, 2008. *Id.* § 229A.4(1). The State alleged that Arnzen was an SVP because he had been convicted of a sexually violent offense and he suffers from "a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility." *Id.* § 229A.2(11).

Despite the two assessments and the petition alleging Arnzen to be an SVP, the parole board issued a work release order on December 30, 2008, granting Arnzen work release status on his anticipated release date. In granting the work release, the parole board determined that there was "a reasonable probability" that Arnzen could "be released without detriment to the community" and was "able and willing to fulfill the obligations of a law abiding citizen." *Id.* § 906.4.

The district court held a probable cause hearing on January 6, 2009. *Id.* § 229A.5(2). The following day, the district court entered an order finding probable cause existed to believe Arnzen to be an SVP. *Id.* § 229A.5(4)(b). The district court ordered that upon the date of Arnzen's scheduled release, he should remain in the custody of the department of corrections pending final disposition of the SVP matter. *Id.* § 229A.5(1). The district court further ordered that Arnzen be transferred to an appropriate secure

---

[1] At the time of judgment, the special sentence was codified at Iowa Code section 901A.2(7). It has since been recodified at 901A.2(8). We cite to the older code section throughout this opinion.

facility to undergo an evaluation to determine whether he is an SVP. *Id.* § 229A.5(5).

On June 17, 2009, Arnzen moved to dismiss the SVP petition arguing pro se that the State had filed the petition for civil commitment prematurely because he had not been allowed to complete his work release, and the State violated his plea agreement by filing the SVP petition. The district court denied the motion.

A bench trial was held on the SVP petition July 7–9, 2010. *Id.* § 229A.7(4). At trial, Arnzen's counsel did not raise or argue the application of collateral estoppel, equitable estoppel, election of remedies, or admission by a party-opponent as defenses to the civil commitment.

On July 14, 2010, the district court found Arnzen to be an SVP beyond a reasonable doubt and placed him into the custody of the Iowa Department of Human Services. *Id.* § 229A.7(5). Arnzen appeals. *Id.*

*Arnzen II*, 2012 WL 163239, at *1–2. Following Arnzen's adjudication as a sexually violent predator, Arnzen was placed in the Civil Commitment Unit for Sexual Offenders (CCUSO) in Cherokee. At some point in 2015, Arnzen was placed in the transitional release program for sexual offenders. The transitional release program is a separate unit within the same facility in Cherokee. Arnzen was in the transitional release program at the time of his postconviction trial.

At the postconviction trial, Arnzen was very specific in the relief he requested. He did not raise a challenge to the special sentence imposed pursuant to Iowa Code section 901A.2(7). Instead, he requested his civil commitment be terminated so he could begin his special sentence on work release and transition back into the community.

Q. Okay. So basically what you want is this Court to somehow get rid of the civil commitment process, to terminate that civil commitment transition process that you are currently in. Is that right? A. Um, yes. And when you say that—

Q. No. It's just a yes or no. Yes? A. Yes.
Q. And then you want the special sentence that was part of your criminal proceeding enforced to that you can start your work release here in Dubuque. Is that correct? A. Yes.

Arnzen was under the apparent belief that upon the completion of the transitional release program he would be required to serve the entirety of his special sentence, essentially duplicating rehabilitative and community re-entry programs.

The district court stated it granted Arnzen's application for postconviction relief. However, the district court did the opposite of what Arnzen requested. The district court held that Arnzen should continue in the transitional release program for sexual offenders but that his special sentence could not be imposed after completion of the transitional release program:

> IT IS THEREFORE ORDERED that the post-conviction relief action is hereby granted. The parole board conditions have been met and cannot be imposed on the Applicant as he is moving in a direction contrary to the goal of the parole board's continued confinement based on reports available in 2009. . . . The special sentence and the work release conditions are in essence antiquated and stale at this point due to all that has been accomplished in the civil commitment. The Court therefore expects that upon the completion of the transitional release program, the Department of Human Services will take the necessary steps to arrange for the return of the Applicant to the community.

Arnzen contends the district court erred. Arnzen contends the district court should have terminated his civil commitment under chapter 229A and commenced his special sentence pursuant to Iowa Code section 901A.2(7). Our review is for the correction of errors at law. *State v. Iowa Dist. Ct.*, 888 N.W.2d 655, 662 (Iowa 2016).

We begin our discussion by examining the legal status of the special sentence at the time of the postconviction trial. Iowa Code section 901A.2(7)

provided the special "sentence of parole supervision shall commence immediately upon the person's release by the board of parole and shall be under the terms and conditions as set out in chapter 906." The State concedes Arnzen was, on July 14, 2010, released by the board of parole to the jurisdiction of the department of human services. His special sentence commenced on that date and ran concurrent to his period of commitment as a sexually violent predator. *See State v. Anderson*, 782 N.W.2d 155, 159 (Iowa 2010) (holding special sentence would commence upon discharge of sentence for predicate offense even where the defendant remained incarcerated or under the supervision and control of the state for other reasons); *State v. Anderson*, 836 N.W.2d 669, 673 (Iowa Ct. App. 2013) (holding a person can serve a special sentence "while the person is subject to civil commitment under chapter 229A, or is being held pending proceedings under chapter 229A").[2] The special sentence imposed pursuant to Iowa Code section 901A.2(7) has been discharged due to the passage of time. The district court thus could not have granted Arnzen the relief he requested.

Even assuming Arnzen's special sentence had not been discharged, the postconviction court could not have granted Arnzen the relief he requested. In the latter *Anderson* case, this court rejected the claim that a defendant subject to

---

[2] While we recognize there is a difference in the language between the special sentence at issue in the *Anderson* cases, *see* Iowa Code § 903B.2, and the special sentence at issue in this case, *see* Iowa Code § 901A.2(7), we do not think the difference in language warrants a different result from that of *Anderson*. The critical point in *Anderson* was that the statute governing civil commitment procedure was a more specific provision than general sentencing provisions, and the purpose of the special sentence can be fulfilled while the defendant is subject to civil commitment pursuant to chapter 229A.

a special sentence was entitled to serve the special sentence on parole prior to being subject to civil commitment pursuant to chapter 229A.

> To summarize, Mr. Anderson was and is entitled to nothing more in this context than the right to have his [ten]–year special sentence commence immediately after he discharges the underlying prison sentence. This is true regardless of what other straits he might be in at the time, i.e., imprisonment on other charges or civil commitment pursuant to Chapter 229A.
> In other words, Mr. Anderson has no legal entitlement to a temporary respite from incarceration or from potential civil commitment for the mere purpose of completing his section 903B.2 special sentence.

*Anderson*, 836 N.W.2d at 673. Similarly, Arnzen has no entitlement to have his civil commitment terminated or delayed upon his request to commence his special sentence on work release. The terms and conditions of his civil commitment are governed by Iowa Code chapter 229A. The methods for challenging commitment pursuant to chapter 229A are set forth exclusively in that chapter. Nothing in that chapter provides civil commitment should be terminated or delayed to allow a committed person to complete a special sentence.

Policy reasons support our interpretation of the relevant statutory provisions. Allowing Arnzen to elect to terminate or delay his civil commitment to commence his special sentence on work release is contrary to the public good. Civil commitment is an individualized determination the offender poses heightened risks to society. "[A]llowing Arnzen to switch programs would run counter to the expressed purpose of the statute [(section 229A)]—treatment and public protection—and we decline to approve the relief he has requested." *Arnzen III*, 2016 WL 7403713, at *2.

Although we have concluded Arnzen is not entitled to the relief he has requested, we nonetheless vacate the judgment of the district court. As noted above, the district court stated it granted Arnzen's application for postconviction relief while at the same time actually denying Arnzen the relief he requested. The district court held the special sentence imposed pursuant to section 901A.2(7) could not be applied here because Arnzen was receiving similar services while in transitional release pursuant to chapter 229A. To the extent the district court held the special sentence could not, or should not, be imposed because of the potentially duplicative services offered to the offender, the district court erred. As noted above, civil commitment as a sexually violent predator is separate and distinct from the special sentence imposed pursuant to section 901A.2(7). There is nothing in the code that allows the special sentence to be deferred, suspended, or vacated because the offender might receive similar programming while committed pursuant to chapter 229A.

For the foregoing reasons, we vacate the judgment of the district court and remand this matter for dismissal of Arnzen's application for postconviction relief.

**REVERSED AND REMANDED.**